1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   SECURITIES AND EXCHANGE          )   CV 10-4769 RSWL
     COMMISSION,                      )
12                                    )
                    Plaintiff,        )   **ORDER RE Defendants'**
13                                    )   **Motions in Limine Nos.**
         vs.                          )   **1-4 [76, 77, 78, 79],**
14                                    )   **and Plaintiff's Motion**
                                      )   **in Limine [74].**
15   LIFE WEALTH MANAGEMENT,          )
     INC., and JEFFERY S.             )
16   PRESTON,                         )
                                      )
17                                    )
                    Defendants.       )
18   _____)

19       Currently before the Court are Defendants' Motions

20   in Limine Nos. 1-4 [76, 77, 78, 79], and Plaintiff's

21   Motion in Limine [74].  Having reviewed all the papers

22   pertaining to these Motions, the hearing on the Motions

23   are advanced to this date and the Court deems the mater

24   appropriate for hearing without oral argument pursuant

25   to FRCP 78 and Local Rule 7-15.  **The Court HEREBY RULES**

26   **AS FOLLOWS**:

27       The Court **DENIES** Defendants' Motions in Limine Nos.

28   1-4, and **GRANTS** Plaintiff's Motion in Limine.

                             1

## I.  BACKGROUND

This Action stems from a Complaint filed by Plaintiff Securities and Exchange Commission ("Plaintiff") against Defendants Life Wealth Management, Inc. ("Life Wealth") and Jeffery S. Preston ("Preston"; collectively, "Defendants") for (1) violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder ("Exchange Act"), and (2) violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Investment Advisers Act").

Plaintiff's claims concern Defendants' investment of client assets in unsecured promissory notes ("Notes") from 2005 to 2007, which were issued by the real estate company Atherton-Newport Investments, LLC ("ANI").  FAC. ¶ 4.  Plaintiff alleges that Defendants misrepresented and failed to disclose to Life Wealth clients the substantial risks associated with ANI Notes.

Furthermore, Plaintiff asserts that Defendant Preston (1) recommended the Notes to Life Wealth clients despite having his own doubts about ANI's viability as a company, (2) recommended the Notes to clients even though ANI investments were highly unsuitable for them, (3) invested clients' assets in the Notes despite the fact that several clients repeatedly questioned the safety of the Notes, (4) failed to follow clients' clear instructions to invest

1  their assets in cash, and (5) did not disclose to
2  clients that he had conducted only a cursory review of
3  key ANI documents, and that at least one client did not
4  understand that the ANI Notes were unsecured.

5      Currently before the Court are Defendants' Motions
6  in Limine Nos. 1-4 [76, 77, 78, 79], and Plaintiff's
7  Motion in Limine [74], all filed on December 4, 2012.
8  Each Motion addresses specific evidence that the
9  respective Parties believe should be excluded from
10 trial.

11              **II.   ANALYSIS**

12 1.  <u>Defendants' Motion in Limine No. 1 to Preclude</u>
13     <u>Any Evidence, Argument, or Reference to Previously</u>
14     <u>Undisclosed Claims of Unauthorized Transactions or</u>
15     <u>Any Other Evidence or Claim Not Disclosed In</u>
16     <u>Discovery</u>

17     Defendants seek to exclude from trial evidence of
18 unauthorized transactions relating to Stephanie
19 Romanovich ("Ms. Romanovich"), Faye Huffman ("Ms.
20 Huffman"), Steven Gilbertson ("Mr. Gilbertson"), and
21 Aaron Adirim ("Mr. Adirim"), with the exception of a
22 previously disclosed allegation concerning Mr. Adirim
23 and his daughter's college fund.  More specifically,
24 Defendants seek to exclude the declaration of Ms.
25 Romanovich and faxed correspondence between Ms.
26 Romanovich and Defendants consisting of a fax cover
27 sheet and accompanying distribution form authorizing
28 the purchase of a $50,000 ANI Note.

Defendants' Motion in Limine No. 1 is hereby **DENIED** for the following reasons.  First, "motions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial."  <u>Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.</u>, No. CV 08-8525PSGP JWX, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010).  Second, contrary to Defendants' argument, it is simply not true that Plaintiff "waited over two years to allege that Defendants conducted unauthorized transactions."  Mot. 4:3-4.  Specifically, Plaintiff alleges in the FAC that Defendants failed to follow clients' instructions to invest their assets in cash and made investments in ANI Notes instead.  In its first and second claims for relief, Plaintiff incorporated by reference the following factual allegation:

> [Defendants] similarly failed to follow Life Wealth clients' clear instructions to invest their assets under management in cash.  For example, a Life Wealth client asked Preston to invest $100,000 of his Life Wealth portfolio in cash for purposes of funding his daughter's college education.  This client, who had already invested $180,000 in the Notes, discovered only after Atherton-Newport defaulted on them that Preston had disobeyed his directive by investing the $100,000 earmarked for his daughter's

4

1        tuition in another Note.

2   FAC ¶ 33.

3        Although Defendants repeatedly state that Mr.

4   Adirim's case is the lone exception to Plaintiff's

5   failure to allege "unauthorized transactions", it is

6   clear from the FAC that Plaintiff only referenced Mr.

7   Adirim as an example to illustrate the type of wrongful

8   conduct in which Defendants generally engaged.  Despite

9   Defendants' statements to the contrary, Plaintiff's

10  allegations in the FAC of unauthorized transactions go

11  beyond those limited to Mr. Adirim and his daughter's

12  college fund.  Thus, Defendants' argument that

13  Plaintiff is attempting to introduce a "new claim" or

14  "new argument" (Mot. 4:7-9, 4:21-23) is unavailing.

15       Furthermore, information obtained during discovery

16  need not be the subject of supplemental disclosure when

17  it is obtained through deposition testimony.  <u>See</u>

18  <u>Nuance Commc'ns, Inc., v. ABBYY Software House</u>, No. C

19  08-02912 JSW MEJ, 2012 WL 2838431 (N.D. Cal. July 10,

20  2012).  <u>See</u> <u>also</u> 8 Charles Alan Wright et al., Federal

21  Practice and Procedure § 2049.1 (2d ed.) ("[T]here is

22  no need as a matter of form to submit a supplemental

23  disclosure to include information already revealed by a

24  witness in a deposition . . . .").  Here, both Mr.

25  Adirim and Ms. Huffman testified during their

26  depositions that Defendants rolled over or purchased

27  ///

28  ///

1  ANI Notes without their authorization.[1]

2  ─────────────────

3     [1]

4     Q.   And then your testimony is that, after that,

5          all of the  subsequent notes that were

6

7          purchased, you did not        approve?

8     A.   No, absolutely not.

9

10 Havermaat Decl., Ex. 2 (Adirim Dep.) 72:5-14.

11

12

13    A.   And I never was upset with [Preston] even for

14         losing the money until I discovered that he

15         traded those notes 16 times, and I told him

16

17         specifically not to do it even on the second

18         time.

19

20 Id. at 86:2-6.

21

22

23    A.   . . . But I never, ever, ever, agreed for them

24         to invest hundred thousand dollars of this

25         particular account – and I stress this

26         particular account that states college fund –

27         in Atherton notes . . . .

28

1    In light of Mr. Adirim and Ms. Huffman's testimony,
2  Defendants do not adequately support their contention
3  that all investors "disclaimed any unauthorized
4  transactions in their depositions."  Mot. 5:11-12.
5  With regard to Mr. Adirim, Defendants cite to six
6  consecutive pages of his deposition and assert that he

7  _____
8  <u>Id.</u> at 182:21-24.
9

10      Q.   Did you have any discussions with Mr. Preston
11
12           or anyone at Life Wealth Management about
13           investing this additional 45 thousand before it
14           happened?
15
16      A.   No.
17
18  Havermaat Decl., Ex. 3 (Huffman Dep.) 109:17-20.
19
20
21      Q.   Were you surprised that this note was purchased
22           for you even though you had said in September
23           2007 that you wanted to get out of the Atherton
24           notes?
25
26      A.   I was shocked.  I was totally shocked.
27
28  <u>Id.</u> at 112:20-23.

7

1  admitted to authorizing all purchases of ANI Notes.

2  However, nowhere in those six cited pages does Mr.

3  Adirim discuss having authorized such transactions.

4  <u>See</u> Anderson Decl., Ex. 2, pp. 38-43.  As to Ms.

5  Huffman, Defendants merely allege that she admitted to

6  authorizing the ANI Note purchases, but they provide no

7  evidentiary support for this assertion.

8        Furthermore, with regard to Ms. Romanovich,

9  Defendants fail to sufficiently address why they did

10  not produce during discovery the fax cover sheet and

11  distribution form at issue here.  Instead, Defendants

12  try to convince the Court that Plaintiff is the Party

13  at fault here for failing to fully explore during

14  discovery the possibility of unauthorized transactions

15  relating to Ms. Romanovich or that Plaintiff, in fact,

16  had these documents all along and simply failed to

17  disclose "the information and documents that it had for

18  over two years."  Reply 5:11-13.  However, the Court is

19  not convinced of this.  Defendants also ignore

20  Plaintiff's contention that Ms. Romanovich actually

21  only authorized the purchase of a $50,000 ANI Note as

22  opposed to a $100,000 ANI Note, the latter of which was

23  indicated in the documents that Defendants produced

24  during discovery.

25        Finally, Defendants' argument about their inability

26  to depose Ms. Romanovich at this stage of litigation

27  lacks merit because (1) Defendants should have been on

28  notice from the First Amended Complaint ("FAC") that

1   unauthorized transactions formed part of the basis for

2   Plaintiff's claims, (2) Plaintiff specifically put

3   Defendants on notice that Ms. Romanovich likely would

4   have evidence related to Plaintiff's claims for relief,

5   and (3) Defendants had opportunity to depose Ms.

6   Romanovich during the discovery phase but chose not to

7   do so.

8       Furthermore, the Court is not persuaded by

9   Defendants' argument that Plaintiff's response to

10  Interrogatory No. 8 indicated that Plaintiff did *not*

11  intend to pursue a theory of unauthorized transactions.

12  While Defendants are correct that Plaintiff, in its

13  response to Interrogatory No. 8, incorporated by

14  reference paragraphs 10 through 31 of the FAC, which do

15  not specifically allege unauthorized transactions,

16  Plaintiff also incorporated by reference the entirety

17  of the FAC, which included paragraph 33 and the

18  allegations of unauthorized transactions contained

19  therein.[2]

20

21       [2]

22  Preston similarly failed to follow Life Wealth

23  clients' clear instructions to invest their

24  assets under management in cash. For example, a

25  Life Wealth client asked Preston to invest

26  $100,000 of his Life Wealth portfolio in case

27  for purposes of funding his daughter's college

28

1   Moreover, the cases cited by Defendants are not on

2  point.  Specifically, Egatz is a patent case in which

3  the term "claim" is used in reference to claims within

4  a patent, not claims for relief.  Egatz, Inc. v.

5  Quicksilver, Inc., No. SACV 10-0300, 2012 U.S. Dist.

6  LEXIS 92201 (C.D. Cal. July 3, 2012).  In Lyman v. CSX

7  Transp., Inc., 364 F. App'x 699 (2d Cir. 2010), the

8  plaintiff alleged negligence claims for the first time

9  in its opposition to the defendant's motion for summary

10  judgment, and in Oracle USA, Inc. v. SAP AG, 264 F.R.D.

11  541 (N.D. Cal. 2009), the plaintiff introduced a new

12  theory of damages late in the discovery process.

13  Neither of these cases are on point here because

14  Plaintiff's unauthorized transactions allegations have,

15  in fact, existed since the filing of the FAC.

16   Based on the foregoing, the Court **DENIES**

17  Defendants' Motion in Limine No. 1.

18

19   education.  This client, who had already

20  invested $180,000 in the Notes, discovered only

21  after Atherton-Newport defaulted on them that

22

23  Preston had disobeyed his directive by investing

24  the $100,000 earmarked for his daughter's

25  tuition in another Note.

26

27

28

FAC ¶ 33.

2.  <u>Defendants' Motion in Limine No. 2 to Preclude Any</u>
    <u>Previously Undisclosed Claims or Theories of</u>
    <u>Liability or Damages, or Evidence Related Thereto</u>

Defendants seek to exclude from trial any negligence-based claim or theory of liability or damages, including disgorgement, pre-judgment interest, and civil penalties. Defendants argue that Plaintiff should not be permitted to pursue such claims because of its failure to disclose these claims before the discovery cutoff date.

Defendants' Motion in Limine No. 2 is hereby **DENIED**. Defendants' argument that Plaintiff never alleged negligence does not find support in the Record, including the FAC and Plaintiff's responses to Defendants' Interrogatories. Specifically, Plaintiff has alleged since the beginning of this litigation that Defendants violated Section 206(2) of the Investment Advisers Act. Although Defendants appear to believe that the factual allegations as set forth in the FAC can only support fraud as a basis for Section 206(2) liability, it is well established that negligence can also establish liability under Section 206(2). <u>See</u> <u>e.g.</u> <u>Vernazza v. SEC</u>, 327 F.3d 851, 860, <u>amended</u>, 335 F.3d 1096 (9th Cir. 2003); <u>SEC v. Steadman</u>, 967 F.2d 636, 643 n. 5 (D.C. Cir. 1992) ("A violation of § 206(2) of the Investment Advisers Act may rest on a finding of simple negligence."); <u>SEC v. Moran</u>, 922 F. Supp. 867, 897 (S.D.N.Y. 1996). Thus, there is strong

1  support for Plaintiff's contention that "[w]hen a
2  complaint alleges a fraud claim that legally can be
3  based on a finding of negligence, that is more than
4  sufficient to put a defendant on notice that negligence
5  is part of the lawsuit." Opp'n 4:6-8.  See Nacchio v.
6  SEC, 438 F. Supp. 2d 1266, 1283 (D. Colo. 2006)
7  ("[B]ecause [the] complaint adequately pleaded
8  scienter, argument that [the] complaint failed to
9  adequately plead negligence was without merit.").  See
10 also SEC v. Mannion, 789 F. Supp. 2d 1321, 1340 (N.D.
11 Ga. 2011).

12      Defendants' reliance on Etaqz, Lyman, and Oracle is
13 misplaced for the same reasons previously discussed for
14 Defendants' Motion in Limine No. 1.  See supra p. 8-9.
15 Furthermore, Defendants' claim that Plaintiff has never
16 disclosed the disgorgement, pre-judgment interest, or
17 civil penalties that it seeks is without merit because
18 Plaintiff clearly states in the FAC that it seeks said
19 remedies and provides the factual and legal bases upon
20 which it seeks such relief.

21      In sum, the Court finds that Plaintiff's FAC and
22 answers to Defendants' Interrogatories were sufficient
23 to put Defendants on notice that negligence was a part
24 of this litigation because (1) Plaintiff asserted a
25 Section 206(2) claim against Defendants in the FAC (FAC
26 ¶¶ 5, 38-39), and (2) it is well established that a
27 Section 206(2) violation may be proven by a mere
28 showing of negligence.  Accordingly, the Court **DENIES**

1   Defendants' Motion in Limine No. 2.

2   3.   <u>Defendants' Motion in Limine No. 3 to Preclude Any</u>

3        <u>Evidence, Argument, or Reference to Any Medical</u>

4        <u>Condition and/or Marital Issues, Including, but Not</u>

5        <u>Limited to SEC's Proposed Exhibit 96</u>

6        Defendants seek to preclude from trial all evidence

7   relating to any of Defendant Preston's medical

8   conditions and marital issues, including, specifically,

9   Exhibit 96, which is email correspondence between

10  Defendant Preston and a personal friend who was also a

11  Life Wealth client.  Defendant argues that this

12  evidence lacks relevance and is unfairly prejudicial.

13  ///

14       Defendants' Motion in Limine No. 3 is hereby

15  **DENIED**.  Plaintiff argues that the emails are relevant

16  because they reflect Defendant Preston's ability to

17  recall certain facts about the alleged fraud, including

18  whether he disclosed the risks of ANI Notes to clients

19  or obtained client authorization before investing their

20  assets in the Notes.  The Court finds that Plaintiff's

21  argument overcomes the relatively low threshold for

22  finding evidence to be relevant.  <u>See</u> Fed. R. Evid.

23  401.  <u>See also</u> <u>Rambus Inc. v. Samsung Elecs. Co., Ltd.</u>,

24  No. C-05-02298 RMW, C-05-00334 RMW, 2008 WL 2944892, at

25  *1 (N.D. Cal. July 16, 2008) (referring to the Rule 401

26  threshold for relevance as "exceedingly low").

27  Moreover, the extent to which the emails are relevant

28  will be more fully determined within the context of

other evidence presented at trial. <u>United States v. Marino</u>, 200 F.3d 6, 11 (1st Cir. 1999) (recognizing that proffered evidence can be more accurately assessed in the context of other evidence presented at trial).

Furthermore, Defendants' argument that the evidence is unduly prejudicial is unavailing. As Plaintiff points out, concerns of prejudice are minimized in the context of a bench trial. <u>See</u> <u>United States v. Caudle</u>, 48 F.3d 433, 435 (9th Cir. 1995). The risk that a verdict will be unfairly affected by the admission of improper evidence in a bench trial is far less than it is in a jury trial. <u>See</u> <u>E.E.O.C. v. Farmer Bros. Co.</u>, 31 F.3d 891, 898 (9th Cir. 1994). <u>See</u> <u>also</u> <u>Gulf States Utils. Co. v. Ecodyne Corp.</u>, 635 F.2d 517, 519 (5th Cir. 1981) (finding that exclusion of relevant evidence in a bench trial on the basis of unfair prejudice is "useless" and illogical).

Finally, Defendants' argument that the emails should be excluded because Plaintiff "grossly misrepresents" them is without merit. First, assuming, *arguendo*, that the emails are admitted, the Court is capable of reviewing their subject matter and giving them the evidentiary weight that they deserve. Second, allowing the emails to be admitted in their entirety guards against the possibility that email excerpts will be taken out of context. Thus, notwithstanding Plaintiff's offer to do so, the Court does not require Plaintiff to redact portions of the emails prior to the

1  offer of admission.

2  　　In sum, the Court **DENIES** Defendants' Motion in

3  Limine No. 3 because (1) the emails at issue are

4  relevant in this case, (2) Defendants have not

5  demonstrated that admission of the emails would be

6  unduly prejudicial, and (3) to the extent that

7  admission of the emails presents a risk of prejudice,

8  such risk is minimized by the fact that this case is

9  set for a bench trial.

10  4.  Defendants' Motion in Limine No. 4 to Exclude Paul

11  　　Meyer as an Expert

12  　　Defendants seek to exclude Paul Meyer ("Mr. Meyer")

13  as an expert witness on the grounds that he failed to

14  establish proper foundation for his testimony as

15  required by Federal Rule of Evidence 702.

16  　　Defendants' Motion in Limine No. 4 is hereby **DENIED**

17  for the following reasons.  The Court is not persuaded

18  by Defendants' first argument that Mr. Meyer fails to

19  provide a sufficient basis for his opinion that

20  Defendants abrogated their duties as registered

21  investment advisers.  In this first argument,

22  Defendants set forth two basic contentions.  First,

23  Defendants contend that Mr. Meyer fails to provide a

24  sufficient basis for his opinion that Defendants should

25  have performed specific due diligence tasks such as

26  conduct "regular onsite visits" to ANI and review ANI's

27  *audited* financial statements and *written* business plan.

28  The Court notes that although Defendants take issue

15

with Mr. Meyer's assertion that registered investment
advisers should conduct "regular onsite visits" before
making investment recommendations, Mr. Meyer does not
rely on this specific due diligence task to support his
opinion that Defendants' due diligence was inadequate.
Rather, "regular onsite visits" is just one of six due
diligence tasks that Mr. Meyer claims Defendants should
have performed before recommending ANI Notes.  More
importantly, although Mr. Meyer does not specifically
cite in his report to the sources from which he derived
each of the aforementioned due diligence tasks, he does
provide a lengthy list of materials upon which he
relied in developing the due diligence standards that
he applied in the case.  Defendants have provided no
legal authority to support the proposition that for Mr.
Meyer's testimony to be admissible, he is required to
specifically identify the source from which he derived
each due diligence task he lists.

     Defendants' next basic contention is that Mr. Meyer
imposes an absolute due diligence standard on
Defendants by pointing out that they failed to review
ANI's audited financial statements and its written
business plan.  The Court rejects this contention
because, aside from making this conclusory assertion,
Defendants provide no explanation as to how Mr. Meyer
imposes an "absolute standard" on Defendants.  In sum,
the Court does not accept Defendants' first argument
because Mr. Meyer has, in fact, provided a sufficient

basis for his opinion relating to Defendants' due diligence, and any additional concerns that Defendants have as to the basis of Mr. Meyer's opinion can be addressed through their cross-examination of him.

The Court finds Defendants' second argument similarly unconvincing.  Here, Defendants make two basic contentions to support their argument that Mr. Meyer's testimony concerning Defendants' customer-specific suitability assessment should be excluded. With regard to Defendants' first contention that Mr. Meyer misstates the facts of the case by stating that Defendants "invested" clients' assets, the Court rejects this contention because it amounts to a mere parsing of words rather than a substantive issue about the misstatement of facts.  With regard to Defendants' second contention that Mr. Meyer "ignores" the customer-specific suitability assessment steps that Defendants performed, this argument is solely based on Defendants' self-serving and conclusory claims that overlook Plaintiff's allegations to the contrary.  See FAC ¶¶ 20-24.  In forming his expert opinion, Mr. Meyer was not obligated to accept Defendants' self-serving statements over Plaintiff's contention that Defendants did, in fact, fail to disclose the Notes' substantial risks to clients.  In essence, this argument boils down to Defendants' disagreement with Mr. Meyer's conclusions, which does not provide a sufficient basis for excluding his opinion.  For these reasons, the

Court finds that Defendants' second argument is insufficient to warrant excluding Mr. Meyer's testimony.

Defendants' third argument is also unavailing. Here, Defendants first claim that Mr. Meyer's testimony should be excluded because he relies on "limited knowledge and incomplete information" in forming his opinion that Mr. Adirim's assets were overly concentrated in ANI Notes. Mot. 7:9-10. However, Defendants fail to provide even a general explanation as to why Mr. Meyer's alleged limited knowledge and incomplete information on this subject should warrant excluding his *entire* opinion concerning Mr. Adirim. Defendants contend next that Mr. Meyer's testimony should be excluded because "the claim of suitability . . . was alleged after the discovery cutoff date." <u>Id.</u> 7:12-13. However, the Court finds that this argument is without merit because Plaintiff clearly alleges in the FAC that "[Defendants] recommended the Notes to [clients] even though the investment was highly unsuitable for them." FAC ¶ 30. For these reasons, Defendants' third argument is unpersuasive.

Finally, the Court rejects Defendants' fourth and fifth main arguments concerning Mr. Gilbertson and Ms. Huffman, respectively. Here, Defendants claim that Mr. Meyer's opinions are "not based on sufficient facts and data" and that he has failed to "properly apply the facts of the case" in forming his opinion that ANI

18

Notes were unsuitable investments for Mr. Gilbertson
and Ms. Huffman.  Reply 5:12-20.  However, this is
really an issue concerning the true location of the
evidence upon which Mr. Meyer relies rather than a
substantial argument about his allegedly improper
application of the facts of the case.  Based on the
declaration that Mr. Meyer submitted in conjunction
with Plaintiff's Opposition to this Motion, it appears
that Mr. Meyer originally cited in his Report to the
wrong pages of Ms. Huffman's and Mr. Gilbertson's
respective 2009 investigative testimony transcripts.
Although Mr. Meyer addressed and corrected this mistake
in his declaration (see Meyer Decl., Ex. 1), Defendants
continue to assert that Mr. Meyer's conclusions stem
from misapplied facts.  However, it appears that the
reason Defendants believe Mr. Meyer misapplied the
facts is because they are looking at Ms. Huffman's and
Mr. Gilbertson's 2012 transcripts, rather than at the
corrected page citations in Ms. Huffman's and Mr.
Gilbertson's 2009 transcripts.  Moreover, while
Defendants claim that Mr. Meyer may be relying on
evidence that "does not even exist" (Reply 5:11-12),
Defendants fail to identify a single assertion made by
Mr. Meyer that is *not* drawn from the Record.  Thus,
based on the evidence presented by the Parties, the
Court finds that Defendants' argument about Mr. Meyer's
misapplication of facts is erroneous.

        Finally, the Court finds that all of Defendants'

arguments go to the *weight* of Mr. Meyer's testimony rather than its *admissibility*.  See United States v. 17.69 Acres of Land, No. 99CV1248 DMS JMA, 2004 WL 5632928, at *1 (S.D. Cal. Dec. 20, 2004) (stating that "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").  See also United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996) (holding the same).

Accordingly, the Court **DENIES** Defendants' Motion in Limine No. 4 to exclude the expert testimony of Paul Meyer.

5. Plaintiff's Motion in Limine No. 1 to Exclude Certain Portions of the Expected Expert Testimony of Gregory B. Wood

The Court **GRANTS** Plaintiff's Motion in Limine to exclude the portion of Mr. Woods' Opinion No. 5 that addresses Defendants' alleged good faith and lack of bias.

The Court finds that Mr. Wood's opinion that Defendants were "unbiased and acting in good faith" when they recommended ANI Notes to Life Wealth clients invades the province of the trier of fact.  See Valiavicharska v. Celaya, No. CV 10-4847 JSC, 2012 U.S. Dist. Lexis 8191, at *8 (N.D. Cal. Jan. 24, 2012) (noting that it is "inappropriate for an expert to attempt to intuit a party's subjective knowledge").

20

See also <u>In re Safety-Kleen Corp.</u>, No. 3:00-1343-17, 2004 Dist. LEXIS 30768, at *4 (D.S.C. Aug. 30, 2004) ("[An] expert may not testify on the ultimate *legal* conclusion as to whether the defendants discharged their duties, or acted in good faith.") (emphasis in original).

Moreover, the cases to which Defendants cite in arguing that Mr. Wood's opinion is admissible are not on point because they do not pertain to expert testimony.  In fact, Defendants fail to cite to any legal authority in support of their proposition that it is appropriate for an expert to testify about Defendants' purported good faith or lack of bias. Although Mr. Meyer may opine that Defendants would have earned the same amount of money from their clients irrespective of the type of investment that Defendants recommended, it is improper for Mr. Meyer to assert conclusions about their motive, intent, or state of mind in recommending ANI Notes.  Such conclusions are reserved for the trier of fact, not for an expert witness.

Accordingly, the Court **GRANTS** Plaintiff's Motion in Limine to exclude the portions of Mr. Woods' expert testimony regarding Defendants' purported good faith or lack of bias.

## IV.  CONCLUSION

Based on the foregoing, this Court **DENIES** Defendants' Motions in Limine Nos. 1-4, and **GRANTS**

1  Plaintiff's Motion in Limine.

2

3  **IT IS SO ORDERED.**

4

5  DATED: April 17, 2013.

6                              _____
                                        RONALD S.W. LEW
7
                              **HONORABLE RONALD S.W. LEW**
8                             Senior, U.S. District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28